UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br>v.<br>JEREMY DAVID HANSON,<br>Defendant | Crim. Nos.  3:22-CR-030013-MGM;<br>3:22-CR-30038-MGM |

## **DEFENDANT'S AMENDED SENTENCING MEMORANDUM**

Defendant, Jeremy David Hanson, respectfully submits this sentencing memorandum in support of his motion for a variance and his recommendation of a sentence of time served. Mr. Hanson concurs with the Government's request that any period of incarceration be followed by three years of supervised release, a $100 special assessment, and no fine or restitution. Mr. Hanson suggests the following special conditions of supervised release:

1. Continue medications as prescribed;
2.  Attend individual therapy services specific to his diagnoses at the frequency recommended by the provider;
3. Participate in recommended services with the Regional Center of Orange County (RCOC).
4. Sign waivers/releases necessary to allow probation to verify RCOC participation and mental health treatment.
5. No possession of firearms.
6. No Internet access except on devices monitored by probation.
7. No driving, unless accompanied by an adult approved by probation.

## ARGUMENT

As we all know, March 2020 was a surreal and singular moment in the living memory of most people in this country. Like all of us, Jeremy Hanson was thrown into a world of extreme isolation and sudden retraction of social and community interaction. It was a difficult time for even the most well-adjusted and emotionally stable amongst us, but it was cataclysmic for people already struggling with mental health and developmental issues. People with various developmental and mental health diagnoses often had associated physical health characteristics which made them more susceptible to serious illness and death than most people. On top of this anxiety-provoking reality, was the complete shutdown of all community-based programming and mental health treatment that had supported people with these diagnoses and their caretakers.[6]

Mr. Hanson is a member of this particularly vulnerable group of people having struggled with mental health issues since childhood. At age 15, he was diagnosed with Autism Spectrum Disorder, ASD (then referred to as Asperger's Syndrome), and obsessive-compulsive disorder when he was fifteen years old.[7] See Ex. A - 2016 Evaluation. By the time he was 19 years old, Mr.

---

[6] https://www.frontiersin.org/articles/10.3389/fpsyt.2020.561882/full

[7] The clinician who evaluated Mr. Hanson when he was fifteen found that he was "borderline" for an ASD diagnosis, and he was formally diagnosed with Autism Spectrum Disorder when he was 22.

Hanson had given up driving due to anxiety and panic attacks. But Mr. Hanson is an intelligent and curious person and was ultimately able to graduate from high school in 2007 and then college in May 2015. See Ex. B – California State University Long Beach Diploma.

By 2015, another external factor that exacerbated Jeremy's issues was reaching a fever pitch nationally – the unchecked proliferation of conspiracy theories and misinformation on social media and fringe news websites, such as Facebook, Twitter, 4chan, 8chan, and Reddit, among others. While even neurotypical people can be drawn into these conspiracy theories, traits associated with Jeremy's ASD and OCD led him to engage with this problematic material on the internet in very unhealthy ways.

Recent ASD research, for example, opines that the combination of rigidity of thinking and a tendency to engage in the collection of large amounts of information (both are traits of autism) with a weakness in a person's "ability to critically and scientifically assess the validity of the information" correlates to a higher prevalence of conspiratorial beliefs. See Georgiou, Neophytos, *Conspiracy Theory Beliefs, Scientific Reasoning and the Analytical Thinking Paradox,* Appl. Cognit. Psychol. 2021; 35:1523-1534 (2021). For Jeremy, this culminated in an escalation of conduct that has caused alarm and pain for people on the receiving end of these threats, and tragic, life-altering

consequences for him personally.

*A Difficult History and a Roadmap to Rehabilitation*

Even though Mr. Hanson's conduct leading to his conviction was concerning, there is a great deal of reassuring evidence that Mr. Hanson, with help, can correct this behavior. Since his diagnosis in 2003, Mr. Hanson has been treated and evaluated by numerous psychological and psychiatric experts. When he has had access to and engaged in appropriate treatment and programming, the problematic conduct has been mitigated and his general well-being and functioning in the community have improved.

Mr. Hanson's conduct first escalated to the point of making threats in July 2015, triggering a cautionary visit from the FBI. Significantly, this time period coincides with Mr. Hanson's graduation from college, which ended a significant external source of routine and healthier social engagement. When the conduct came to light, Mr. Hanson became distraught and expressed suicidal ideation. His mother, Lauren Zack acted quickly to seek out further treatment and evaluation for her son. She succeeded in convincing him voluntarily admit himself to UC Irvine Health Center for a psychiatric evaluation. See Ex. C – UCI Records. After he was deemed to not be a danger to himself or others, Mr. Hanson agreed at that time to have his computer taken away from him and had no Internet access for approximately nine

months. The FBI did not press charges and Mr. Hanson did not resume the conduct when he was allowed to resume Internet access.

Following his admission to UC Irvine, Mr. Hanson's providers worked with him to identify a successful course of psychiatric treatment. See. Ex. D – 2016 Evaluation. After a great deal of trial and error, Mr. Hanson's symptoms began to improve with the prescription regimen put in place in 2019. By the end of 2019, Mr. Hanson had begun to engage with services at the Regional Center of Orange County (RCOC), the local resource in his community providing support for individuals with developmental disabilities and their families.[8] Mr. Hanson seemed to particularly benefit from and enjoy equine therapy offered there. According to his mother, by the end of 2019 "Jeremy's mood and behavior had improved to the point that he and I were discussing the possibility of his receiving services from the State Department of Rehabilitation, a program providing job training and placement services for disabled adults; we made it a goal for 2020."

The COVID pandemic had other plans. In March 2020, Mr. Hanson's therapy options through the RCOC came to an abrupt halt and his psychiatric care shifted entirely to a telemedicine model due to the COVID lockdown. Without these supports and unbeknownst to

---

[8] RCOC's mission and services may be found at https://www.rcocdd.com.

Ms. Zack, Mr. Hanson spent those early COVID months tumbling even deeper than ever down the toxic rabbit hole that he had started down in 2015. He resumed the threatening Internet conduct – an outcome that was tragic for him and terribly frightening for the targets of his threats.

*Post-arrest Progress and Challenges*

Following his arrest and arraignment on the present charges, Mr. Hanson was evaluated by Dr. Jenna Tomei Walker, Ph.D. regarding issues of competence to stand trial. Ex. E – Walker Letter. Dr. Walker was not asked at that early stage of the litigation to perform a comprehensive forensic risk of violence assessment, but counsel did ask her to opine regarding the appropriateness of the release conditions being requested by the government and considered by the court at that time with any potential risk in mind.[9] Dr. Walker provided a letter to counsel opining that Mr. Hanson's lack of prior violent conduct, lack of capacity or activity to carry out threats (i.e. obtaining firearms or ability to travel independently), apparent lack of history of substance abuse, and support from his mother were all reassuring factors counterbalancing the risk of targeted violence that might otherwise be

---

[9] Following the hearing in January 2023, counsel sought to retain Dr. Walker to expand on her initial evaluation of Mr. Hanson, but Dr. Walker was unable to travel to FCI Victorville where Mr. Hanson was moved on January 25, 2023.

suggested by Mr. Hanson's Internet communications. Id. Dr. Walker opined that other protective measures may assist in managing any risk. Id. She suggested that "Mr. Hanson continue on his medication regimen and begin seeing a clinician specializing in the treatment of autism spectrum disorders. This treatment should focus primarily on monitoring his anger related to others, suicidal ideation, violent ideation, and in the development of coping strategies." Id. Dr. Walker also opined that services should occur more frequently than had been possible during the COVID pandemic. Id.

The Government appropriately recognizes Mr. Hanson's mental health and developmental diagnoses as mitigating factors, but the eighteen months it recommends is still too long. Such a lengthy period of incarceration is not only greater than necessary to achieve the purposes of sentencing, but also threatens to exacerbate his mental health and emotional issues. This, in turn, could make his road to independence and appropriate social and emotional expression even more arduous and less successful.

It is imperative that Mr. Hanson transition, as soon as possible, out of the dehumanizing isolation that marks his present circumstance of incarceration and into a rigorous program of therapy with providers who have expertise in dealing with people with his diagnoses. Mr. Hanson has experienced significant disruptions in his mental health treatment and medication regimen

while incarcerated and awaiting sentencing. It took several days before Mr. Hanson received his anti-anxiety medication after he was first detained in October 2022 and there was a disruption again when he was moved to FCI Victorville on January 25, 2023. As recently as this month, Mr. Hanson was deprived of his mental health medication for eleven days when the facility's provider went on vacation with no backup to refill inmate prescriptions. Mr. Hanson suffered symptoms of withdrawal and emotional distress due to the lengthy deprivation of his medication.

Mr. Hanson's surest path to rehabilitation is in the community. Mr. Hanson needs intensive therapy to help him work on his rigid thinking. He needs to engage in pro-social programming and activities in the community. He needs resources and support to foster independent living and decreased reliance on his mother. Mr. Hanson is already an established client with the RCOC, which is undoubtedly the best resource for services covered by his insurance in the area. As services began to be restored during the COVID pandemic, Mr. Hanson resumed receiving some services through RCOC. Mr. Hanson's most recent RCOC Individual Treatment Plan meeting took place on December 10, 2021, a few months before he was arrested on the present charges.[10] Ex. F – RCOC Individual Treatment Plan. Following his arrest, Mr. Hanson

---

[10] No annual Individual Program Review took place in 2022 because Mr. Hanson was incarcerated.

continued to receive services through RCOC until he was ordered detained by the court in October, but he was not allowed to participate in some of the recommended non-clinical programming recommended by the RCOC because his pretrial probation officers in California maintained a very cramped interpretation of the court-ordered release conditions.

Mr. Hanson is very lucky, however, that his mother, Lauren Zack, is a retired licensed social worker. She has been working very hard during this period to ensure that appropriate programming and treatment options are in place for Mr. Hanson as soon as he is released from custody. See Ex. G - Zack letter. While he has been incarcerated, Ms. Zack has ensured that Mr. Hanson's file with the RCOC has remained open and she is actively engaged with program administrators to make sure that Mr. Hanson will be able to resume participating in RCOC programming quickly upon his release.

## Conclusion

Without a doubt, Mr. Hanson's threats were couched in offensive and graphically violent terms and were surely incredibly scary and disturbing to the people who were either the direct recipients or required by their employment to interact with them. However, multiple mental health providers have assessed Mr. Hanson over the years and have determined that he lacks the capacity to carry out these threats. They have strongly urged continued, consistent

treatment with providers who specialize in working with people with Autism. After years of COVID-related reductions in services, these treatment options are becoming available again. It is crucial that Mr. Hanson transition as quickly as possible from a carceral setting, which is ill-equipped to meet his needs and address his rehabilitation, to the proven, community-based treatment programs which have demonstrably helped him in the past.

Respectfully Submitted,
Jeremy David Hanson,
DEFENDANT,
By his attorney,

/s/Marissa Elkins
Marissa Elkins, Esquire,
BBO#668840
31 Trumbull Rd. Suite B
Northampton, MA 01060
melkins@elkinslawllc.com
(413) 341-2131

Certificate of Service

I hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on April 11, 2023.

/s/Marissa Elkins